FILED
SEP 13 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARA FOLEY,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

---

**DECISION AND ORDER**

1:18-CV-00512 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Cara Foley ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is denied and the Commissioner's motion (Dkt. 14) is granted.

## BACKGROUND

Plaintiff protectively filed her application for DIB on October 28, 2014. (Dkt. 10 at 70, 136).[1] In her application, Plaintiff alleged disability from March 20, 2013, due to several impairments, including: postherpetic neuralgia, anxiety, and recurring shingles. (*Id.* at 70, 136). Plaintiff's application was initially denied on January 30, 2015. (*Id.* at 70, 136-47). A video hearing was held before administrative law judge ("ALJ") David J. Begley on December 27, 2016. (*Id.* at 70, 66-92). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*). On April 4, 2017, the ALJ issued an unfavorable decision. (*Id.* at 83-113). Plaintiff requested Appeals Council review; her request was denied on March 5, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2015. (Dkt. 10 at 72). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from her alleged onset date of March 20, 2013, through her date last insured of September 30, 2015. (*Id.*).

At step two, the ALJ found that through the date last insured Plaintiff suffered from the severe impairments of: postherpetic neuralgia and anxiety. (*Id.*). The ALJ further found that Plaintiff's status post-appendicitis and history of mitochondrial myopathy and carnitine palmitoyltransferase II deficiency (the "Deficiency") were non-severe. (*Id.* at 72-73).

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 73). The ALJ particularly considered the criteria of Listings 1.02 and 12.06 in reaching his conclusion. (*Id.* at 73-74).

Before proceeding to step four, the ALJ determined that through the date last insured Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff:

> must avoid concentrated exposure to extreme heat and cold; avoid hazardous machinery, unprotected heights, and open flames; can do simple, routine

repetitive tasks; and must work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision making, and only occasional changes in the work setting.

(*Id.* at 74-77). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 78).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of mail room clerk, office helper, and cafeteria worker. (*Id.* at 78-79). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 79).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) it was erroneous for the ALJ to find that Plaintiff's Deficiency occurred after the date last insured and did not occur for the 12 months necessary to qualify as a "severe" impairment; (2) the ALJ erred in failing to include any left upper extremity limitations in its RFC finding; and (3) the ALJ's RFC finding was unsupported by the evidence recited in the decision. (Dkt. 11-1 at 16-27). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

## A. Severe Impairment Determination

Plaintiff argues the ALJ's finding that Plaintiff's impairment of the Deficiency "occurred either after the date last insured []or ha[s] not yet occurred for the 12 months necessary to qualify as a severe impairment" is not supported by substantial evidence. (Dkt. 11-1 at 16-21). The Court is not persuaded by Plaintiff's argument for the following reasons.

### 1. The Step Two Severity Standard

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). "An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings." *Colon v. Astrue*, No. 03:08-CV-1276 (DJS), 2009 WL 1289244, at *1 (D. Conn. May 6, 2009) (citing 20 C.F.R. § 404.1508). The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual

work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"An impairment 'must last or be expected to last for a continuous period of 12 months.'" *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 46 (W.D.N.Y. 2003) (quoting 20 C.F.R. § 404.1509); *see Barnhart v. Walton*, 535 U.S. 212, 213 (2002) (holding that the Social Security Act requires both the impairment and the subsequent inability to engage in any substantial gainful activity to last twelve months to meet the durational requirement). Additionally, to receive DIB benefits, a claimant must show the onset of the disability occurred before the date last insured. *See* SSR 83-20 (1983) ("A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s).").

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v.*

*Berryhill*, No. 6:17-cv-06720-MAT, 2018 U.S. Dist. LEXIS 176372, at *7 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 U.S. Dist. LEXIS 87554, at *15 (W.D.N.Y. May 24, 2018)) (alteration in original).

### 2. The ALJ's Consideration of Plaintiff's Impairments

Plaintiff claims the record shows she suffered from "fatigue and muscle weakness dating back to at least 2013." (Dkt. 11-1 at 17-18; *see* Dkt. 10 at 361-62, 366-67). On June 30, 2015, Dr. Julian L. Ambrus recommended that Plaintiff get a muscle biopsy (Dkt. 10 at 556), which Plaintiff underwent on August 21, 2015 (*id.* at 744-45). The biopsy results were returned on September 16, 2015, and on November 10, 2015, Plaintiff met with Dr. Ambrus to discuss the results of her biopsy. (*Id.* at 555). At that time, Dr. Ambrus diagnosed Plaintiff with the Deficiency and gave her a supplement prescription for treatment. (*Id.*). On February 9, 2016, Plaintiff had an appointment with Dr. Ambrus where she reported she had not started taking one of the supplements she was prescribed, but that she felt somewhat better. (*Id.* at 554). The parties do not appear to dispute that the duration of the alleged impairment from the Deficiency did not last beyond February 9, 2016. Plaintiff's date last insured was September 30, 2015. (*Id.* at 72).

Plaintiff has failed to meet her burden of establishing that the Deficiency was an impairment before the biopsy was performed, let alone a severe impairment. Even if the record does support Plaintiff's claim that she has suffered from fatigue and weakness since 2013, there can be no finding of an impairment unless it has been "shown by medically acceptable clinical and laboratory diagnostic techniques." *Johnson v. Berryhill*, No. 2:16-

cv-58, 2017 WL 2671076, *9 (D. Vt. June 21, 2017) (quotations omitted). The record shows no laboratory tests were performed to diagnose the cause of the fatigue and weakness until August 21, 2015. (Dkt. 10 at 744-45). Accordingly, Plaintiff could not establish that the Deficiency constituted an impairment before the test was performed on August 21, 2015. Given that the impairment from the Deficiency did not go beyond February 9, 2016, the ALJ's determination that the impairment did not occur for the 12 months necessary to qualify as a severe impairment (*id.* at 72) is supported by substantial evidence.

Plaintiff argues the ALJ "was not medically qualified to disregard all of Plaintiff's symptoms . . . simply because she did not receive a formal diagnosis until slightly prior to the date last insured" and should have further developed the administrative record to establish the onset date of the Deficiency. (Dkt. 11-1 at 18-19). This argument is without merit. The ALJ did not disregard Plaintiff's symptoms; rather, he was bound to follow the various statutes and regulations that provide that the existence of an impairment cannot be found unless there has been a showing of medically acceptable clinical and laboratory diagnostic techniques in addition to Plaintiff's testimony regarding symptoms. *See Vella v. Comm'r of Soc. Sec.*, 394 F. App'x 755, 757 (2d Cir. 2010) ("[A]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment." (quoting 42 U.S.C. § 423(d)(5)(A))); *see also* 20 C.F.R. § 404.1508.

Additionally, Plaintiff has failed to establish the severity of the alleged impairment. The record before the Court shows that Plaintiff felt better by February 6, 2016, after taking most of her prescribed supplements. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("[A] remediable impairment is not disabling."); *Aman v. Colvin*, 46 F. Supp. 3d 220, 224-25 (W.D.N.Y. 2014) (finding determination that applicant had not suffered from medically determinable impairment was supported by substantial evidence where "the record suggests that plaintiff's treatment and medication were highly effective in mitigating plaintiff's symptoms"). The only record evidence Plaintiff points to in support of the Deficiency's severity is her testimony regarding her pain and fatigue (Dkt. 10 at 96-97, 106-07), progress notes from 2013 (*id.* at 366-67), and an assessment from 2014 (*id.* at 584). The notes and assessment predate August 2015, which is the earliest start date for the Deficiency that the record could support, and the ALJ had discretion to weigh Plaintiff's subjective testimony "in light of the other evidence in the record" related to the impairment. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). As there appears to be no other evidence in the record after the November 10, 2015, diagnosis date demonstrating the severity of the Deficiency, it was reasonable for the ALJ to conclude that "[t]here is nothing in the medical evidence of record to suggest" the Deficiency "would cause more than a minimal limitation on [Plaintiff]'s ability to perform basic work activities." (Dkt. 10 at 69-70).[2]

---

[2] Plaintiff also argues that the accuracy of the opinions of the consultative examiners and state agency consultants is called into question because they "were rendered without knowledge of Plaintiff's diagnosis" of the Deficiency. (Dkt. 11-1; Dkt. 16 at 4). However,

Moreover, had the ALJ erred in his assessment of the Deficiency's severity, "the omission of an impairment [by the ALJ] at step two does not in and of itself require remand and may be deemed harmless error." *Rye v. Colvin*, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016)(citing *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003) and *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "This is particularly true where the disability analysis continued and the ALJ considered all of the claimant's impairments in combination in his RFC determination." *Id.* (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)). Although Plaintiff contends the RFC finding failed to include limitations attributable to the Deficiency (Dkt. 11-1 at 20-21), the ALJ stated he "considered all symptoms" when assessing Plaintiff's work-related limitations, and discussed the evidence that led up to and included the diagnosis of the Deficiency. (Dkt. 10 at 75-77 ("The claimant stated that medications provide partial relief and injections are helpful in controlling her pain.")). Accordingly, even if the ALJ's determination that the Deficiency was a non-severe impairment was not supported by substantial evidence, it was harmless error.

---

all of these opinions were rendered well before the August 2015 biopsy, and so were issued not without knowledge of Plaintiff's diagnosis, but before the diagnosis. (*See* Dkt. 10 at 329 (January 7, 2015 evaluation by Dr. Luna); *id.* at 334 (January 7, 2015 evaluation by Dr. Balderman); *id.* at 339 (January 30, 2015 opinion by state agency consultants)). Additionally, the fact that none of these doctors diagnosed Plaintiff with the Deficiency does not support Plaintiff's argument that the Deficiency has been ongoing since 2013.

B. **Inclusion of Left Upper Extremity Limitations in RFC Finding**

Plaintiff argues that the ALJ failed to include left upper extremity limitations when making his RFC finding even though "[t]he evidence clearly demonstrates the significant left upper extremity limitations Plaintiff suffers." (Dkt. 11-1 at 24). The Court is unpersuaded by Plaintiff's argument for the reasons that follow.

Plaintiff contends that the ALJ in his RFC finding determined that "Plaintiff was able to lift up to 20 pounds with her left upper extremity, which is wholly unsupported by the evidence of record." (Dkt. 11-1 at 22). Plaintiff's argument mischaracterizes the ALJ's decision. The ALJ limited Plaintiff to light work (Dkt. 10 at 74), which is defined in 20 C.F.R. 404.1567(b), as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Nowhere does the RFC assess that Plaintiff can lift up to 20 pounds with *only* her left upper extremity; instead the ALJ found that Plaintiff could lift up to 20 pounds in general.

Plaintiff further argues that the ALJ attempted to "downplay" the severity of Plaintiff's left upper extremity pain by failing to specify that Dr. Balderman's opinion regarding Plaintiff's physical limitations was specific to her left upper extremity and by mischaracterizing the pain relief provided by trigger point injections Plaintiff received. (Dkt. 11-1 at 22-23). These arguments once again misstate the ALJ's decision. To the extent the ALJ did not include the portion of Dr. Balderman's opinion referenced by Plaintiff, "an ALJ is not required to discuss every piece of evidence submitted" and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not

considered." *Brault v. Soc. Sec. Adm'r, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quotation omitted). The record shows that the evidence of the location of Plaintiff's postherpetic neuralgia was indeed considered because the ALJ repeatedly recognized that Plaintiff has postherpetic neuralgia "in the left upper posterior thoracic area at the level of the scapula," and found it to be a severe impairment. (*See, e.g.*, Dkt. 10 at 76). Additionally, the ALJ's characterization of the injections as being "helpful in controlling her pain" (*id.*) is consistent with Plaintiff's hearing testimony that "they help a little bit" (*id.* at 103).

Plaintiff also contends that the ALJ's decision "failed to demonstrate how limiting Plaintiff to light work with . . . additional limitations . . . accounts for all of the limitations imposed by her postherpetic neuralgia." (Dkt. 11-1 at 24). However, the Second Circuit has held:

> Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree . . . that remand is not necessary merely because an explicit function-by-function analysis was not performed.

*Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). In the instant matter, the ALJ's decision was supported by substantial evidence. As discussed further below, the ALJ afforded "some weight" to Dr. Balderman's consultative opinion that Plaintiff "had mild physical limitations mainly due to persistent pain." (Dkt. 10 at 77). The ALJ noted that at the consultative examination, Plaintiff "had full range of motion" and "full strength and dexterity," as well as "exhibited tenderness to mild palpitation in the area of the left

scapula." (*Id.* at 76). The ALJ then took Plaintiff's severe impairment of postherpetic neuralgia into account "by limiting [Plaintiff] to light work with the additional limitations that the claimant must avoid concentrated exposure to extreme heat and cold; and must avoid hazardous machinery, unprotected heights, and open flames." (*Id.*). Plaintiff fails to point to any portion of the medical record contradicting the ALJ's findings as to the appropriateness of the limitations he imposed, nor does the Court's review of the record so find. *See Cichocki*, 729 F.3d at 177 ("Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record[.]"); *Sperduti v. Comm'r of Soc. Sec.*, No. 1:18-CV-0527 (WBC), 2019 WL 3029515, at *4 (W.D.N.Y. July 11, 2019) (holding ALJ's RFC finding was proper where "[t]he ALJ's physical RFC was more restrictive than Dr. Liu's medical opinion and supported by the evidence as outlined by the ALJ" and where plaintiff failed "to provide any evidence in the record to support a more restrictive RFC"). Accordingly, the Court finds that not providing explicit reasons for Plaintiff's specific limitations does not necessitate remand of the ALJ's decision.

C. **Discounting Medical Opinions in the RFC Analysis**

Plaintiff further argues the ALJ discounted or disregarded every medical opinion of record and instead unlawfully substituted his own judgment for that of a competent medical

opinion. (Dkt. 11-1 at 24). For the reasons that follow, the Court is also not persuaded by this contention.

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> [T]he ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In the instant matter, the ALJ gave "some weight" to the opinions of consultative examiners Dr. Luna and Dr. Balderman, and to the opinion of the state agency medical consultants.[3] (Dkt. 10 at 77). The ALJ found Dr. Luna's opinion from the psychological

---

[3] Plaintiff also argues the decision "failed to consider the comprehensive mental health assessments completed by Plaintiff's treating counselor." (Dkt. 11-1 at 25). However, the assessments referred to by Plaintiff are not opinions, *i.e.*, "statements from acceptable medical sources that reflect judgments about the nature and severity of [Plaintiff's] impairment(s)," that the ALJ was required to consider. 20 C.F.R.

- 16 -

consultative exam was somewhat consistent with the objective medical evidence. (Dkt. 10 at 77). Additionally, the ALJ found the opinion of internal medicine consultative examiner Dr. Balderman was somewhat consistent with the medical evidence. (*Id.*). The ALJ relied on Dr. Balderman's physical assessment that Plaintiff had full range of motion and full strength and dexterity, but stated his opinion would only be given "some weight" because the "opinion was vague, and did not list the claimant's physical limitations in vocationally relevant terms." (*Id.*). The ALJ's decision gave no weight to the physical findings of the state agency medical consultants because they were made by a single decision maker, and found that the state agency opinion regarding Plaintiff's mental limitations was somewhat consistent with the objective medical evidence of record. (*Id.*).

"Simply because the ALJ afforded no single opinion controlling weight does not mean . . . that []he substituted [his] own expertise of the medical proof for medical opinion." *Currie v. Comm'r of Soc. Sec.*, No. 17-CV-602(MAT), 2018 WL 5023606, at *3 (W.D.N.Y. Oct. 17, 2018). "[R]emand is not always required . . . where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). In other words, an ALJ can rely on the underlying assessment

---

§ 404.1527(a)-(b). Instead, they are summaries of *Plaintiff's* statements regarding her symptoms not entitled to the weight afforded medical opinions.

from a consultative opinion in making his determination. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (holding the ALJ did not have further obligation to supplement record after discounting physician opinion but "tak[ing] into account many of [the physician]'s findings").

The ALJ's decision regarding Plaintiff's limitations is supported by substantial evidence. In the instant matter, the ALJ used the factual findings from the opinions of Dr. Balderman, Dr. Luna, and the state agency medical consultants in making his RFC determination.[4] (Dkt. 10 at 77). The ALJ also used the other medical evidence of record to make his finding, including Plaintiff's treatment records, none of which contradicted his RFC determination. (*Id.* at 75-77); *see Pellam*, 508 F. App'x at 90 (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information[.]"); *Thomas v. Colvin*, No. 14-CV-6302, 2015 WL 4412873, at *8 (W.D.N.Y. July 20, 2015) ("[T]here is nothing in the RFC that plainly contradicts Dr. Boehlert's opinion, and there is no indication that the ALJ selectively chose evidence in the record to support his conclusion, even assuming, *arguendo*, that the RFC was not reconciled seamlessly with Dr. Boehlert's opinion."). If anything, the ALJ's RFC finding was in many respects more restrictive than the opinions

---

[4] Plaintiff argues the ALJ's failure "to include any limitations in regard to Plaintiff's ability to reach, handle, finger, and feel" is unsupported by evidence in the decision. (Dkt. 16 at 6). However, the ALJ's decision relied on the physical assessment conducted by Dr. Balderman, and stated Dr. Balderman found Plaintiff "had full range of motion and full strength and dexterity." (Dkt. 10 at 77).

of record, which is not improper. *See Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) ("There is nothing improper about an ALJ considering medical opinion evidence that assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, such as a claimant's subjective testimony, to nevertheless choose to assign certain limitations that result in a *more* restrictive RFC finding."). For example, Dr. Balderman opined Plaintiff had only "mild physical limitations mainly due to persistent pain" in her left scapula (Dkt. 10 at 337), whereas the ALJ limited Plaintiff to light work with further restrictions (*id.* at 74-75).

Accordingly, the Court finds under these circumstances that the ALJ's RFC finding was supported by substantial evidence, and that further development of the record was not necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 13, 2019
Rochester, New York